UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
------------------------------------x
DAVID KATT,                          :
                                     :
        Plaintiff,                  :
                                     :
    v.                               :
                                     :    **CIVIL ACTION COMPLAINT**
SOBO 54 INVESTMENTS I, LLC,          :    **FOR INJUNCTIVE AND**
                                     :    **DECLARATORY RELIEF**
        Defendant.                  :
                                     :
                                     :
                                     :
------------------------------------x

## INTRODUCTION

1. Plaintiff DAVID KATT ("Plaintiff") asserts the following claims against SOBO 54 INVESTMENTS I, LLC ("Defendant") as follows.

2. Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.1 million who are blind. According to the American Foundation for the Blind's 2017 report, approximately 110,000 visually impaired persons live in the State of Colorado.

3. "Being unable to access website puts individuals at a great disadvantage in today's society, which is driven by a dynamic electronic marketplace and unprecedented access to information." U.S. Dep't of Justice, Statement of Eve L. Hill before the Senate Comm. on Health, Educ., Labor & Pensions, at 3 (May 14, 2013).

4. Plaintiff is a blind, visually impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*

5. Plaintiff requires screen-reading software to read website content using his computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200.

6. Plaintiff brings this civil rights action against Defendant to enforce Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("Title III"), which requires, among other things, that a public accommodation (1) not deny persons with disabilities the benefits of its services, facilities, privileges and advantages; (2) provide such persons with benefits that are equal to those provided to nondisabled persons; (3) provide auxiliary aids and services—including electronic services for use with a computer screen reading program—where necessary to ensure effective communication with individuals with a visual disability, and to ensure that such persons are not excluded, denied services, segregated or otherwise treated differently than sighted individuals; and (4) utilize administrative methods, practices, and policies that provide persons with disabilities equal access to online content.

7. By failing to make its Website available in a manner compatible with computer screen reader programs, SOBO 54 INVESTMENTS I, LLC a public accommodation subject to Title III, deprives blind and visually-impaired individuals the benefits of its online content and services—all benefits it affords nondisabled individuals—thereby increasing the sense of isolation and stigma among these Americans that Title III was meant to redress.

8. Upon information and belief, because SOBO 54 INVESTMENTS I, LLC's Website has never been accessible and because SOBO 54 INVESTMENTS I, LLC does not have, and has never had, an adequate corporate policy that is reasonably calculated to cause its

Website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring:

a. that SOBO 54 INVESTMENTS I, LLC retain a qualified consultant acceptable to Plaintiff ("Mutually Agreed Upon Consultant") who shall assist it in improving the accessibility of its Website so the services on them may be equally accessed and enjoyed by individuals with vision related disabilities;

b. that SOBO 54 INVESTMENTS I, LLC work with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be given web accessibility training on a periodic basis, including onsite training to create accessible content at the design and development stages;

c. that SOBO 54 INVESTMENTS I, LLC work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether SOBO 54 INVESTMENTS I, LLC's Website may be equally accessed and enjoyed by individuals with vision related disabilities on an ongoing basis;

d. that SOBO 54 INVESTMENTS I, LLC work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether SOBO 54 INVESTMENTS I, LLC's Website may be equally accessed and enjoyed by individuals with vision related disabilities on an ongoing basis;

e. that SOBO 54 INVESTMENTS I, LLC work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Website, along with an e-mail address and tollfree phone number to report accessibility-related problems; and

f. that Plaintiff, their counsel and its experts monitor Defendant's Website for up to two years after the Mutually Agreed Upon Consultant validates it is free of accessibility errors/violations to ensure SOBO 54 INVESTMENTS I, LLC has adopted and implemented adequate accessibility policies.

9. Web-based technologies have features and content that are modified on a daily, and in some instances, an hourly, basis, and a one time "fix" to an inaccessible website will not cause the website to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to web-based technologies have been changed in a meaningful manner that will cause the website to

remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

11. Venue is proper in this district under 28 U.S.C. §1391(b)(1) and (2) because Defendant conducts and continues to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District.

12. Defendant is subject to personal jurisdiction in this District. Defendant has been and is committing the acts or omissions alleged herein in the District of Colorado that caused injury and violated rights the ADA prescribes to Plaintiff and to other blind and other visually impaired consumers.

13. A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in the in this District: on several separate occasions, Plaintiff has been denied the full use and enjoyment of the facilities and services of Defendant's physical locations and/or Website in Colorado. These access barriers that Plaintiff encountered have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from visiting Defendant's brick-and mortar physical locations, which Plaintiff intends to do once the Website is accessible to all.

14. Defendant also purposefully targets and otherwise solicits business from Colorado residents through its Website. Because of this targeting, it is not unusual for Defendant to conduct business with Colorado residents. In fact, the opposite is true: Defendant clearly does business over the Internet with Colorado residents, having entered into contracts with

        Colorado residents that involve the knowing and repeated transmission of computer files over the Internet. See *Gniewkowski v. Lettuce Entertain You*, Order, ECF No. 123 (W.D. Pa Apr. 25, 2017) clarified by Order of Court, ECF No. 169 (W.D. Pa. June 22, 2017) (Judge Schwab) (The court exercised personal jurisdiction over an out-of-forum defendant for claims its website is inaccessible to a visually disabled resident of the forum state.); see also *Access Now Inc. v. Otter Products, LLC*, Case No. 1:17-cv-10967-PBS (D.Mass. Dec. 4, 2017) (exercising personal jurisdiction over forum-based plaintiff's website accessibility claims against out-of-forum website operator).

15. This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## PARTIES

16. Plaintiff, at all relevant times, is and was a resident of Douglas County, Colorado.

17. Defendant is and was at all relevant times a Colorado Limited Liability Company with its principal place of business located 1898 S Bannock St, Denver, CO 80223.

18. Defendant's physical locations, its Website and the services offered thereupon, is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. §12181(7).

## NATURE OF ACTION

19. The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually impaired persons alike.

20. In today's tech-savvy world, blind and visually impaired people have the ability to access website using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable

Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually impaired person may independently access the internet. Unless websites are designed to be read by screen-reading software, blind and visually impaired persons are unable to fully access websites, and the information and services contained thereon.

21. Blind and visually impaired users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. One such program is NonVisual Desktop Access, better known as "NVDA."

22. For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the visually impaired user is unable to access the same content available to sighted users.

23. The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making website accessible to blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure their website are accessible.

**STATEMENT OF FACTS**

24. Defendant operates the SOBO 54 INVESTMENTS I, LLC Residential Complex and Leasing Office as well as its website, www.sobo58.com, and offers it to the public and offers features that should allow all consumers to access the facilities and services that Defendant offers regarding its physical locations.

25. Defendant operates in Colorado, with an address of 1898 S Bannock St, Denver, CO 80223.

26. Defendant offers its Website in connection with its physical location. The facilities and services offered by Defendant through its Website include but are not limited to the following: Available residences, learn about condo designs, contact information, and related services.

27. It is, upon information and belief, Defendant's policy and practice to deny Plaintiff, along with other blind or visually impaired users, access to Defendant's Website, and to therefore specifically deny the services that are offered and integrated with Defendant's Residential Complex. Due to Defendant's failure and refusal to remove access barriers to its website, Plaintiff and visually impaired persons have been and are still being denied equal access to Defendant's Residential Complex and Leasing Office and the numerous services and benefits offered to the public through its Website.

28. Plaintiff is a visually impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software. Plaintiff is, however, a proficient NVDA screen-reader user and uses it to access the Internet.

29. During Plaintiff's visits to the Website, the last occurring in March of 2020, Plaintiff encountered multiple access barriers that denied him full and equal access to the facilities and services offered by Defendant to the public. Plaintiff was thus unable to: learn about Available residences, learn about condo designs, contact information, and related services.

30. Due to Defendant's failure to build its Website in a manner that is compatible with screen reader programs, Plaintiff is and was unable to understand, and thus is denied the benefit of, much of the content and services he wishes to access or use. For example:

a. Many features on the Website lacks alt. text, which is the invisible code embedded beneath a graphical image. As a result, Plaintiff was unable to differentiate what was on the screen due to failure of the Website to adequately describe its content.

b. Many features on the Website also fail to Add a label element or title attribute for each field. This is a problem for the visually impaired because the screen reader fails to communicate the purpose of the page element. It also leads to the user not being able to understand what he or she is expected to insert into the subject field.

c. The Website also contains a host of broken links, which is a hyperlink to a non-existent or empty webpage. For the visually impaired this is especially paralyzing due to the inability to navigate or otherwise determine where one is on the website once a broken link is encountered.

31. As a result of visiting Defendant's Website and from investigations performed on his behalf, Plaintiff is aware that the Website includes at least the following additional barriers blocking his full and equal use:

a. The Website does not provide a text equivalent for every non-text element;

b. The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

c. Web pages lack titles that describe their topic or purpose;

d. Headings and labels do not describe topic or purpose;

e. Keyboard user interfaces lack a mode of operation where the keyboard focus indicator is visible;

f. The default human language of each web page cannot be programmatically determined;

g. The human language of each passage or phrase in the content cannot be programmatically determined;

h. Labels or instructions are not always provided when content requires user input;

i. Text cannot be resized up to 200 percent without assistive technology so that it may still be viewed without loss of content or functionality;

j. A mechanism is not always available to bypass blocks of content that are repeated on multiple web pages;

k. A correct reading sequence is not provided on pages where the sequence in which content is presented affects its meaning;

l. In content implemented using markup languages, elements do not always have complete start and end tags, are not nested according to their specifications, may contain duplicate attributes, and IDs are not always unique; and

m. The name and role of all UI elements cannot be programmatically determined; things that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

32. Due to the inaccessibility of Defendant's Website, blind and visually impaired individuals such as Plaintiff, who need screen-readers, cannot fully and equally use or enjoy the facilities, products, and services Defendant offers to the public through its Website. The access barriers Plaintiff encountered have caused a denial of Plaintiff's full and equal access in the past, and now deter Plaintiff on a regular basis from visiting the Website in order to perform functions equal to the sighted.

33. These access barriers on Defendant's Website have deterred Plaintiff from visiting Defendant's physical locations and enjoying them equal to sighted individuals because:

        Plaintiff was unable to find the location and hours of operation of Defendant's Leasing Office on its Website and other important information, preventing Plaintiff from visiting the locations to take advantage of the services that it provides to the public.

34. If the Website were equally accessible to all, Plaintiff could independently navigate the Website and complete a desired transaction as sighted individuals do. In fact, Plaintiff intends to return to the Website when it is equally accessible for visually-impaired consumers in order to complete his intended transaction, as it is more convenient for Plaintiff to access the Website to make a purchase than to travel to a physical location to make the same purchase. However, as long as the Access Barriers continue to exist on the Website, Plaintiff is prevented from making such a purchase.

35. These barriers, and others, deny Plaintiff full and equal access to all of the services the Website offers, and now deter him from attempting to use the Website and/or visit Defendant's Leasing Office. Still, Plaintiff would like to, and intends to, attempt to access Defendant's Website in the future to research the services the Website offers, or to test the Website for compliance with the ADA.

36. Due to Defendant's failure and refusal to remove access barriers to its Website, Plaintiff and visually impaired persons have been and are still being denied equal access to Defendant's Website, and the numerous services and benefits offered to the public through its Website.

37. If the Website were accessible, i.e. if Defendant removed the access barriers described above, Plaintiff could independently research the Website's offerings, including locations and hours and promotions available at the its physical locations.

38. Through his attempts to use the Website, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually impaired people.

39. Though Defendant may have centralized policies regarding the maintenance and operation of its Website, upon and information and belief, Defendant has never had a plan or policy that is reasonably calculated to make its Website fully accessible to, and independently usable by, individuals with vision related disabilities. As a result, the complained of access barriers are permanent in nature and likely to persist.

40. The law requires that Defendant reasonably accommodate Plaintiff's disabilities by removing these existing access barriers. Removal of the barriers identified above is readily achievable and may be carried out without much difficulty or expense.

41. Plaintiff's above request for injunctive relief is consistent with the work performed by the United States Department of Justice, Department of Transportation, and U.S. Architectural and Transportation Barriers Compliance Board (the "Access Board"), all of whom have relied upon or mandated that the public-facing pages of website complies with an international compliance standard known as Web Content Accessibility Guidelines version 2.1 AA ("WCAG 2.1 AA"), which is published by an independent third party known as the Worldwide Web Consortium ("W3C").

42. Plaintiff has been, and in the absence of an injunction will continue to be, injured by Defendant's failure to provide its online content and services in a manner that is compatible with screen reader technology.

43. Defendant has long known that screen reader technology is necessary for individuals with visual disabilities to access its online content and services, and that it is legally responsible for providing the same in a manner that is compatible with these auxiliary aids.

44. Indeed, the Disability Rights Section of the DOJ reaffirmed in a 2015 Statement of Interest before the United States District Court for the District of Massachusetts that it has been a "longstanding position" of the Department of Justice "that the ADA applies to website of public accommodations." See *National Association of the Deaf v. Massachusetts Institute of Technology*, No. 3:15-cv-300024-MGM, DOJ Statement of Interest in Opp. To Motion to Dismiss or Stay, Doc. 34, p. 4 (D. Mass. Jun. 25, 2015) ("MIT Statement of Interest"); see also *National Association of the Deaf. v. Harvard University*, No. 3:15-cv-30023-MGM, DOJ Statement of Interest of the United States of America, Doc. 33, p.4 (D. Mass. Jun. 25, 2015) ("Harvard Statement of Interest").

45. The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

   In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . .

42 U.S.C. § 12188(a)(2).

46. There is no DOJ administrative proceeding that could provide Plaintiff with Title III injunctive relief.

47. While DOJ has rulemaking authority and can bring enforcement actions in court, Congress has not authorized it to provide an adjudicative administrative process to provide Plaintiff with relief.

48. Plaintiff alleges violations of existing and longstanding statutory and regulatory requirements to provide auxiliary aids or services necessary to ensure effective communication, and courts routinely decide these types of matters.

49. Resolution of Plaintiff's claims does not require the Court to unravel intricate, technical facts, but rather involves consideration of facts within the conventional competence of the courts, e.g. (a) whether Defendant offers content and services on its Website, and (b) whether Plaintiff can access the content and services.

50. Without injunctive relief, Plaintiff and other visually impaired consumers will continue to be unable to independently use the Website, thereby violating their rights.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF THE ADA, 42 U.S.C. § 12181 *et seq.*

51. Plaintiff repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

52. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

53. Defendant's physical locations are a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). The Website is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

54. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

55. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

56. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

57. The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. § 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has not been provided any reasonable accommodation to those services. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

58. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

## SECOND CAUSE OF ACTION

## DECLARATORY RELIEF

59. Plaintiff repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

60. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that its Website contains access barriers denying blind customers the full and equal access to the services and facilities of its Website, which Defendant owns, operations and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq*. prohibiting discrimination against the blind.

61. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief:

62. A Declaratory Judgment that at the commencement of this action SOBO 54 INVESTMENTS I, LLC was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that SOBO 54 INVESTMENTS I, LLC took no action that was reasonably calculated to ensure that its Website is fully accessible to, and independently usable by, individuals with visual disabilities;

63. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendant to take all steps necessary to bring its Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its Website is fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that

Defendant has adopted and is following an institutional policy that will in fact cause it to remain fully in compliance with the law—the specific injunctive relief requested by Plaintiff is described more fully in paragraph 8 above;

64. An award of costs and expenses of this action;

65. Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, including costs of monitoring Defendant's compliance with the judgment (see *Hadix v. Johnson*, 143 F.3d 246 (6th Cir. 1998), aff'd in part, rev'd in part, 527 U.S. 343 (1999); *Jenkins v. Missouri*, 127 F.3d 709 (8th Cir. 1997); W*alker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761 (5th Cir. 1996); *Stewart v. Gates*, 987 F.2d 1450, 1452 (9th Cir. 1993) (district court should permit compensation for the post judgment monitoring efforts by the plaintiff's counsel that are "useful and necessary to ensure compliance with the court's orders"); *Garrity v. Sununu*, 752 F.2d 727, 738-39 (1st Cir. 1984); *Adams v. Mathis*, 752 F.2d 553 (11th Cir. 1985); *Willie M. v. Hunt*, 732 F.2d 383, 385, 387 (4th Cir. 1984); *Bond v. Stanton*, 630 F.2d 1231, 1233-34 (7th Cir. 1980); Nor*thcross v. Board of Educ.*, 611 F.2d 624, 637 (6th Cir. 1979) ("Services devoted to reasonable monitoring of the court's decrees, both to ensure full compliance and to ensure that the plan is indeed working…are essential to the long-term success of the plaintiff's suit.") (citing 3rd Circuit's support for District Court's award of prospective fees to plaintiff's counsel);

66. Such other and further relief as this Court deems just and proper.

Dated:   Asbury Park, New Jersey
         September 29, 2020

                                                            MARCUS & ZELMAN, LLC

                                                            By: */s/ Ari H. Marcus, Esq.*

Ari H. Marcus, Esq.
Ari@MarcusZelman.com
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Tel: (732) 695-3282
Fax: (732) 298-6256

ATTORNEYS FOR PLAINTIFF